UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

YVONNE JOHNSON,

    Plaintiff,                 Case No. 3:16-cv-408

vs.

COMMISSIONER OF SOCIAL SECURITY,    District Judge Walter H. Rice
                                                    Magistrate Judge Michael J. Newman

    Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 9), the administrative record (doc. 6),[2] and the record as a whole.

**I.**

**A.**     **Procedural History**

Plaintiff filed an application for SSI on July 25, 2013 (PageID 247-261) alleging disability as a result of a number of alleged impairments including, *inter alia*, affective disorder, generalized anxiety disorder, and borderline intellectual functioning. PageID 79.

After initial denial of her application, Plaintiff received a hearing before ALJ Benjamin Chaykin on August 18, 2015. PageID 103-44. The ALJ issued a written decision on September

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

8, 2015 finding Plaintiff not disabled. PageID 76-95. Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a full range of work at all exertional levels, "there are jobs in significant numbers in the national economy that [Plaintiff] can perform[.]" PageID 94.

Thereafter, the Appeals Council denied Plaintiff's request for review on August 24, 2016, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 41-44. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID 76-95), Plaintiff's Statement of Errors (doc. 8), and the Commissioner's memorandum in opposition (doc. 9). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff

disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work

experience, and RFC -- do significant numbers of other jobs exist in
the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In her Statement of Errors, Plaintiff argues that the ALJ erred in: (1) evaluating her mental impairments under Listing § 12.05(C); (2) evaluating the opinions of three consultative psychologists, specifically, Gordon Harris, Ph.D., Giovanni Bonds, Ph.D., and Michael Firmin, Ph.D.; and (3) evaluating the opinion of treating psychotherapist Margaret Barker, L.S.W. Doc. 8 at PageID 825-37. Finding error in the ALJ's analysis of Listing § 12.05(C), the Court does not address the merits of Plaintiff's remaining two alleged errors.

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the [L]istings yields an automatic determination of disability . . . the evidentiary standards [at Step Three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Plaintiff bears the burden of proving that she meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Listing § 12.05 provides in relevant part:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required

4

> level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
>
> . . .
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, for a claimant to meet Listing § 12.05, Plaintiff must establish: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning[3] initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Golden v. Comm'r of Soc. Sec.*, 591 F. App'x 505 (6th Cir. 2015) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).

### A. Adaptive Functioning

The ALJ concludes that Plaintiff "does not display deficits in adaptive functioning as required by section 12.05[,]"[4] and that "it is the consensus of mental health professionals that the claimant's intellectual functioning falls within the borderline range rather than in the range indicative of intellectual disability." *Id.*

In assessing Plaintiff for special education, she was placed in a Developmentally Handicapped Program beginning at age 13. PageID 383. At that time, evaluators concluded that, "[s]he appears to be slow"; "has a difficult time verbalizing"; her "oral reading is poor"; and

---

[3] While Listing § 12.05 does not define "adaptive functioning," another portion of the Listings defines "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1).

[4] Intellectual disability (intellectual development disorder) is characterized by deficits in general mental abilities, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience. *Diagnostic and Statistical Manual of Mental Disorders*, 5th ed., Text Revision (DSM-V-TR) at p. 31. The deficits result in impairments of adaptive functioning, such that the individual fails to meet standards of personal independence and social responsibility in one or more aspects of daily life, including communication, social participation, academic or occupational functioning, and personal independence at home or in community settings. *Id.*

"[s]he can barely add." PageID 384. When Plaintiff was 17, evaluators found that Plaintiff's "academic skills are significantly below grade level"; she performed a reading recognition task "at a late fourth grade level"; and "was at an early fourth grade level on the math section." PageID 389. She completed tenth grade, began eleventh, but then left school. PageID 111.

In a Developmentally Handicapped Class Screening Report in 1987 -- when Plaintiff was 17 -- psychologist Orphus R. Taylor, Ph.D., noted that Plaintiff "demonstrated a severe deficiency in social intelligence." PageID 392. Specifically, Dr. Taylor found that Plaintiff's socialization was equivalent to a seven year-old, while her communication was equivalent to an eleven year-old. PageID 392. In regards to daily living, at age 13, Plaintiff had the daily living skills equivalent to a ten year old. PageID 384.

Plaintiff was not able to graduate from high school; she never obtained her drivers' license; she lives with her mother and her adult autistic son whom her mother has guardianship over; she rarely leaves the house; she feels panicky and anxious in public; she rocks back and forth to calm herself; she has never lived on her own; she does not do laundry, cook for herself, or go shopping; she does not maintain her own savings or checking account. PageID 110-13, 121, 123, 125.

Based on the foregoing the ALJ's conclusion -- that Plaintiff did not display deficits in adaptive functioning that manifested before age 22 -- is unsupported by substantial evidence.

**B. IQ Test Scores**

Social Security Regulations allow a Plaintiff to use the lowest IQ score on a given test (verbal, performance, or full-scale) to satisfy Listing § 12.05(C)(1). 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C)(1). The Listings state that, "[i]n cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale

6

IQ's are provided in the Wechsler series, we use the lowest of those in conjunction with 12.05." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D)(6)(c).

Plaintiff's full-scale IQ scores -- 61 at age 13, 59 at age 17, and 42 at age 42 -- are well within Listing 12.05(C)(1)'s range of 60 through 70. PageID 384, 389, 456. In rejecting Plaintiff's IQ scores, the ALJ relied on Dr. Harris' notes, which stated Plaintiff's 2012 results were invalid due to lack of effort. PageID 89, 455. Dr. Harris further opined that Plaintiff's IQ results were "likely a very significant under-estimate of her true level of ability." Page 89, 455. However, even excluding her 2012 results, Plaintiff's scores at age 13 and 17 are within Listing 12.05(C)(1)'s range. PageID 384, 389. Thus, the ALJ's determination that Plaintiff does not have a valid IQ score in the 60 through 70 range is unsupported by substantial evidence.

**C. Other Impairments**

Listing 12.05(C) required Plaintiff to show she has a physical or other mental impairment that imposes an additional and significant work-related limitation of function. The regulations explain, "[f]or paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, a 'severe' impairment(s), as defined in ... 416.920(c)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A. At Step Two, the ALJ found that in addition to Plaintiff's cognitive difficulties, her severe impairments included affective disorder and anxiety. PageID 79. Thus, there is no dispute she met this requirement as the ALJ's decision itself acknowledges the existence of such limitations.

For all the above reasons, Plaintiff's first alleged error is well taken.

**IV.**

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing, or to

7

reverse and order an award of benefits. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

An Order remanding for payment of benefits is only warranted "where proof of the disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176.

A judicial award of benefits is warranted in the present case because the evidence overwhelmingly shows that Plaintiff meets or equals Listing 12.05's introductory paragraph and the criteria of Listing 12.05(C), or the evidence satisfying Listing 12.05's introductory paragraph and the criteria of Listing 12.05(C) is strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176; *Breitenstein v. Astrue*, Case No. 3:10cv00032, 2011 U.S. Dist. LEXIS 34330, *1 (S.D. Ohio Jan. 6, 2011).

Accordingly, Plaintiff is entitled to an Order remanding this matter for payment of SSI.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be **UNSUPPORTED BY SUBSTANTIAL EVIDENCE, and REVERSED**;

2. Plaintiff's case be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for an immediate award of benefits; and

3. This case be **CLOSED**.

Date: November 3, 2017            s/ Michael J. Newman
                                  Michael J. Newman
                                  United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).